IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
BALTIMORE DIVISION

FILED LOGGED ENTERED RECEIVED
APR 06 2009
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

Iva J. Matutat a/k/a Iva Schnitzer
2008 Eagles Landing Way
Odenton, Maryland 21113

Plaintiff

v.

Countrywide Home Loans, Inc.
c/o The Corporation Trust
300 E Lombard St.
Baltimore, Md 21202

America's Servicing Company
8040 Stagecoach Circle
Frederick, MD 21701

OCWEN Financial Corporation
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Equifax Consumer Services LLC
c/o The Prentice-Hall Corp. System
7 St. Paul Street, Ste 1660
Baltimore, Md 21202

Trans Union LLC
c/o CSC-Lawyers Incorporating Service
7 St. Paul Street, Suite 1660
Baltimore, Md 21202

Experian Information Solutions, Inc.
c/o The Corporation Trust Incorporated
300 E Lombard St
Baltimore, Md 21202

Defendants

CIVIL CASE NO.:

RDB 09 CV 859

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 ET SEQ.

Plaintiff, IVA MATUTAT, hereby brings this complaint against defendants Countrywide Home Loans, Inc., America's Servicing Company, and OCWEN Loan Servicing.

JURISDICTION AND VENUE

1. Federal jurisdiction is present in this action which is brought under the Federal Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. (hereinafter "FCRA").

2. This action is filed in the Baltimore Division of the United States District Court, District of Maryland. Such assignment is proper because Plaintiff's claims arose from acts of the Defendant perpetrated therein.

THE PLAINTIFF

3. The Plaintiff is a resident of Maryland and an active duty armed forces lower enlisted service member stationed at Fort Meade, Maryland.

THE DEFENDANTS

4. Countrywide Home Loans, Inc. (hereinafter "Countrywide") provides, *inter alia*, home loans to consumers such as Plaintiff. Countrywide is a furnisher of credit reporting information to the Defendant credit reporting agencies including Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union LLC

(hereinafter referred to collectively as the "reporting agencies"). Countrywide solicits consumers in all fifty states and including Maryland, via internet and other mediums.

5. America's Servicing Company (hereinafter "ASC") initiates and/or manages home loans on behalf of consumers like Plaintiff. ASC is a furnisher of credit reporting information to the various reporting agencies. ASC maintains a head office in Maryland and solicits consumers in this state.

6. OCWEN Financial Corporation (hereinafter "OCWEN") specializes in servicing residential mortgage loans for consumers like Plaintiff, often purchasing or otherwise assuming loans originating from other lenders. OCWEN is a furnisher of credit reporting information to the various reporting agencies. OCWEN solicits consumers, or manages accounts of consumers, in all fifty states and including Maryland, via internet and other mediums. OCWEN provided a secondary loan to an originating loan mortgage company, Aurora Loan Services, which opened a mortgage in Plaintiff's name.

## STATEMENT OF FACTS

7. Beginning in or around April, 2006, Plaintiff was courted to engage in a real estate transaction that would ultimately prove to be a fraud scheme. Plaintiff was approached by one Daimon Glenn (herinafter "Glenn") – a former acquaintance from the military and who had previously been discharged from same - who alleged he was a loan officer with Cateret Mortgage Corporation. Glenn inquired as to whether Plaintiff would be interested in improving her credit score and at the same time make a profit by receiving a "holder's fee" by allowing a third party to take out a home loan in her name.

8. The third party was one Emeka Onuorah (hereinafter "Onuorah") who allegedly owned his own "company." Glenn indicated that Onuorah would pay the "holder's fee" after the home loan/purchase went to closing. Closing would be in Texas, and she would be required to travel there in order to sign the loan documents at closing.

9. Plaintiff initially considered the proposal and, because Glenn allegedly worked for Cateret, was prior military and was an acquaintance, she thought that it was a legitimate real estate transaction. She therefore provided Glenn her personal information, including social security number and financial information, as well as copies of her identification. She did not at any time, however, sign any closing documentation, nor give authority to either Glenn or Onuorah – expressly or implicitly - to sign any home loan/closing documents.

10. A short time afterwards, however, Glenn broke off contact with Plaintiff, and she was unable to reach him. She had no contact information for Onuorah. She then began to receive notices from several mortgage companies, including Countrywide, ASC, Aurora Loan Services, Faslo Solutions, and Saxon Mortgage Services. Most of the notices indicated late payments and penalties for non-payment.

11. All of the companies, and including several secondary loan servicing companies, reported the mortgages as open debt/accounts on Plaintiff's credit report managed by the reporting agencies. The total debt attributed to Plaintiff was in excess of One Million Dollars ($1,000,000).

12. As Plaintiff began to receive more information upon inquiry to the various lenders, she noticed that some of the loan originating documents indicated that she was an "investor" earning more than $250,000 per year. The various loan companies also

indicated that her signature was on the closing documents, and had been notarized by a public notary in Texas.

13. In or around January, 2008, Plaintiff contested all loans with the fraud departments or similar office of the lenders, including that of Defendants. The various credit reporting agencies were also notified that the relevant lines on Plaintiff's credit report were contested via written and/or on-line dispute procedures. Whereas most of the mortgage companies did favor Plaintiff's request by deleting their tradelines from Plaintiff's credit reports, Defendants have refused to do so.

14. Between March, 2008, and October, 2008, Plaintiff attempted to provide all information necessary to the Defendant's in order to resolve the dispute, and repeatedly requested that the Defendants delete their tradelines that negatively affected her credit report.

15. Plaintiff, aided by her husband, contacted Defendant mortgage companies numerous times to request that it correct the erroneous derogatory credit information.

16. Plaintiff's credit score and her ability to acquire credit has been seriously affected by Defendant's refusal to delete their tradelines from Plaintiff's credit reports. Defendants have compromised Plaintiff's access to credit and other opportunities by providing erroneous or incomplete credit information and by failing to properly investigate the erroneous information despite plaintiff's several disputes.

FIRST CLAIM OF RELIEF AGAINST EQUIFAX, EXPERIAN AND TRANS UNION

(15 U.S.C. §1681e(b))

17. Plaintiff incorporates all other paragraphs as though fully set forth herein.

18. Equifax, Experian and Trans Union violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

19. As a result of this conduct, action and inaction of Equifax, Experian and Trans Union, the Plaintiff suffered damage by loss of credit and other opportunities, loss of the ability to purchase and benefit from credit, mental and emotional pain, and the anguish, humiliation, and embarrassment of credit denials.

32. The conduct of Equifax, Experian and Trans Union was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, the conduct was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 168 lo.

33. The Plaintiff is entitled to recover costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

SECOND CLAIM FOR RELIEF AGAINST EQUIFAX, EXPERIAN AND TRANS UNION (15 U.S.C. §1681i)

34. Plaintiff repeats and realleges and incorporates by reference all other paragraphs.

35. Equifax, Experian and Trans Union violated 15 U.S.C. § 1681i by failing to maintain and provide complete credit information regarding the Plaintiff's credit file

after receiving actual notice of errors, by failing to conduct a reasonable investigation, and by failing to review and consider all relevant information submitted the consumer with respect to the disputed item of information.

36. As a result of the action and inaction of Equifax, Experian and Trans Union the Plaintiff suffered damage by loss of credit and other opportunities, loss of the ability to purchase and benefit from credit, the mental and emotional pain and anguish and the humiliation and embarrassment of the credit denials.

37. The action and inaction of Equifax, Experian and Trans Union was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681 n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

38. The Plaintiff is entitled to recover costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §16810.

THIRD CLAIM FOR RELIEF AGAINST COUNTRYWIDE, ASC, AND OCWEN

39. Plaintiff incorporates all other paragraphs as though fully set forth herein.

40. 15 U.S.C. §1681s-2b explains the responsibilities of furnishers of credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by the furnisher. Upon receiving notice of a dispute, the furnisher is to review all relevant information provided by the consumer reporting agency, conduct a reasonable investigation and report the results to the

appropriate consumer reporting agencies. The consumer may bring a cause of action against the furnisher if it does not comply with the provisions of § 1681s-2b.

41. Plaintiff communicated her dispute regarding the derogatory credit information to the Equifax, Experian and Trans Union on multiple occasions. Thereafter, plaintiff is informed and believes that each of these credit reporting agencies notified Countrywide, ASC, and OCWEN of the dispute in accordance with § 1681i(a)(2) each time it received a dispute from plaintiff.

42. Thereafter, plaintiff is informed and believes that Countrywide, ASC, and OCWEN failed to review all relevant information provided by the credit reporting agencies and/or conduct a reasonable investigation, in violation of §1681s-2b.

43. In addition, plaintiff is informed and believes that Countrywide, ASC, and OCWEN notified the credit reporting agencies that the derogatory credit information reported with respect to the plaintiff was correct.

44. Plaintiff is informed and believes that the violation of § 1681 s-2b by Countrywide, ASC, and OCWEN was willful. In the alternative, plaintiff is informed and believes that the violation of §1681s-2b by Countrywide, ASC, and OCWEN was negligent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant:

a) Actual damages pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

b) Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

c) For an injunction requiring defendants to correct Plaintiff's credit information, and

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n(c).

DATED: February 19, 2009

LAW OFFICE OF MARC D. SCHIFANELLI

By: MARC D. SCHIFANELLI
705 Melvin Ave., Ste. 104
Annapolis, MD 21401
410-263-0028
f: 626-605-2258
Bar No.: 27753
Attorney for Plaintiff

Iva Matutat
Plaintiff

DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.